The STATE of Ohio, Appellee,

v.

HYATT, Appellant.

[Cite as *State v. Hyatt* (1996), 116 Ohio App.3d 418.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 96–CO–6.

Decided Dec. 4, 1996.

*Robert L. Herron,* Columbiana County Prosecuting Attorney, and *John E. Gamble,* Assistant Prosecuting Attorney, for appellee.

*Marilyn M. McMillin,* for appellant.

GENE DONOFRIO, Judge.

This matter is before the court on a delayed appeal by defendant-appellant, Larry F. Hyatt, following his guilty plea to one count of felonious assault in violation of R.C. 2903.11(A)(2).

On January 12, 1994, appellant was indicted by the Columbiana County Grand Jury on one count of felonious assault, with a firearm specification. The indictment arose out of a shooting incident occurring on November 20, 1993 at

the home which appellant shared with his girlfriend, Norma McNicol. The victim, Thomas Welsh, Sr., was Norma's ex-husband.

There are conflicting versions as to the events leading up to the shooting. However, it is clear that appellant and the victim were on friendly terms prior to the incident. On the day of the shooting, Welsh came to pick up his child for visitation and arrived at the home before appellant did. When appellant came home, he began to get the other children ready to go to a parade. While Norma McNicol was upstairs, a gun which appellant recently purchased went off and grazed the victim's head. During the proceedings below, appellant maintained that the shooting was an accident, while appellee, state of Ohio, maintained that appellant intentionally shot Welsh.

Appellant initially entered a plea of not guilty to the charges as set forth in the indictment. However, on May 2, 1994, appellant appeared before the court, withdrew his previous plea, and entered a plea of guilty to the charge of felonious assault under a Crim.R. 11 plea agreement. At the plea hearing, the prosecutor stated:

" * * * At the time of sentencing the State will recommend that the defendant be incarcerated for a definite—for an indefinite term of three to fifteen years in prison, and that we will oppose his application for probation. If probation is granted we will recommend EOCC. The defendant will request probation, ask that a presentence report be ordered, and that his bond be continued. Additionally, the State agrees to dismiss the specification as contained in the Indictment."

At the plea hearing, the trial court determined that appellant could read, write and understand English; that appellant was not under the influence of drugs or alcohol; that appellant was not suffering from any mental health problem; that appellant understood the plea agreement and that his counsel had gone over the agreement with him; and that no threats or promises had been made to appellant.

The trial court also determined that appellant's counsel had gone over two documents with appellant entitled "Judicial Advice to Defendant" and "Defendant's Response to the Court." Said documents set forth the minimum and maximum sentences available upon a finding of guilty of felonious assault. Further, the document entitled "Judicial Advice to Defendant" set forth at paragraph 4:

"The maximum sentence for the offense to which you have indicated you wish to plead GUILTY is 8 to 15 years indefinite term of imprisonment in a state correctional facility, minimum actual, and a fine of $7,500."

At the plea hearing, the trial court stated to appellant:

"THE COURT: The other possibility, as far as the maximum penalty goes, would be if I would sentence you—I have the option under the Ohio law to sentence you to a term of three, four, five, six, seven or eight years of actual incarceration. Actual incarceration means you would not be eligible for shock probation, or probation, or any other kind of early release other than parole at the minimum. Do you understand that?

"MR. HYATT: Yes, Your Honor."

The trial court also advised appellant as to the rights he was waiving by pleading guilty to the offense.

At the conclusion of the hearing, the trial court accepted appellant's plea upon a finding that it was being made knowingly, intelligently, and voluntarily. The trial court then ordered that a presentence investigation be conducted.

The parties appeared before the trial court again on August 18, 1994 for sentencing. At the sentencing hearing, appellant's counsel again requested that appellant be placed on probation, arguing that appellant had no prior criminal history other than traffic violations, that the shooting had been an accident, and that appellant had not intended to harm the victim. At the conclusion of the hearing, the trial court denied the application for probation and sentenced appellant to three to fifteen years incarceration.

On January 26, 1996, appellant filed an application for delayed consideration under *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, arguing that his trial counsel had been ineffective. By order entered February 27, 1996, this court granted appellant's motion for delayed appeal, but limited the appeal to the issue of whether appellant's guilty plea had been entered knowingly, intelligently, and voluntarily.

Appellant has listed two assignments of error. In the first, he argues that his plea was not made knowingly, intelligently, and voluntarily because he was led to believe that he was pleading guilty to a probationable offense when, in fact, the offense was nonprobationable.

Appellant argues that at no time was he specifically advised by the trial court or by his counsel that the offense to which he was pleading guilty was a nonprobationable one. Appellant argues that this violated Crim.R. 11(C)(2)(a), which provides:

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept such plea without first addressing the defendant personally and:

"(a) Determining that he is making the plea voluntarily, with understanding of the nature of the charge and of the maximum penalty involved, *and, if applicable, that he is not eligible for probation.*" (Emphasis added.)

Appellant argues that he thought that with the dismissal of the firearm specification, he would become eligible for probation. Appellant argues that the record reflects that his trial counsel also thought so, since he continuously requested that probation be granted to appellant.

Appellant cites *State v. Hawk* (1992), 81 Ohio App.3d 296, 610 N.E.2d 1082, and argues that probation in the instant case was an unfulfillable promise upon which he relied. Appellant argues that, under *State v. Piacella* (1971), 27 Ohio St.2d 92, 56 O.O.2d 52, 271 N.E.2d 852, his plea was thus not made voluntarily and knowingly.

In response, appellee acknowledges that the offense was nonprobationable. Appellee further acknowledges that appellant was not specifically told that he was ineligible for probation. However, appellee argues that the trial court substantially complied with Crim.R. 11 and that is all that is required under the case of *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163. Appellee argues that since appellant was specifically informed of the maximum penalty and that he was facing imminent sentence, substantial compliance with Crim.R. 11 occurred.

Appellee further cites *State v. Nero* (1990), 56 Ohio St.3d 106, 564 N.E.2d 474. In that case, the Court of Appeals for Cuyahoga County reversed the defendant's conviction because the trial court had not advised the defendant that the offense was nonprobationable. On appeal, the Ohio Supreme Court reversed, holding that the fact that a defendant is not told that an offense is nonprobationable does not require the vacation of a guilty plea if the reviewing court determines that there was substantial compliance, that is, whether the defendant understood the implications of his plea and the rights he was waiving.

Upon review, we find that *Stewart* is distinguishable from the instant case. In *Stewart*, the defendant did not make any requests for probation, nor was there any request to prepare a presentence report for the court. In addition, the facts in *Stewart* reflect that the defendant did not believe, nor was he told, that he was eligible for probation at the time he gave his plea.

By contrast, the record in the instant case clearly reflects that the prosecutor and appellant's counsel considered the offense to be probationable and that probation was specifically being asked for by appellant.

We also find that the *Nero* case is distinguishable. In *Nero*, the Ohio Supreme Court based its finding of substantial compliance with Crim.R. 11(C) upon the fact that the defendant knew he was ineligible for probation even though the trial

court did not specifically so inform him. Conversely, the record in the instant case supports appellant's allegation that he thought he was eligible for probation, and that the prosecutor and defense counsel thought so also.

Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review. *State v. Nero, supra,* at 107, 564 N.E.2d at 475, citing *State v. Stone* (1975), 43 Ohio St.2d 163, 72 O.O.2d 91, 331 N.E.2d 411. Crim.R. 11(C)(2) requires the trial court to inform the defendant of the constitutional guarantees he waives by entering a guilty plea and also requires the trial court to determine that the plea is being voluntarily made, with an understanding of the nature of the charge, the maximum penalty involved and, if applicable, that the defendant is not eligible for probation.

We find that where the record reflects that a defendant pleads guilty with the understanding that he is eligible for probation when he is not, and that understanding is evidenced by repeated requests for probation by trial counsel, substantial compliance with Crim.R. 11(C)(2)(a) does not occur where the trial court fails to inform the defendant that he is not eligible for probation. Without substantial compliance with Crim.R. 11, we cannot say that appellant's plea was made knowingly, intelligently, and voluntarily. See, generally, *State v. Engle* (1996), 74 Ohio St.3d 525, 660 N.E.2d 450; *State v. Caudill* (1976), 48 Ohio St.2d 342, 2 O.O.3d 467, 358 N.E.2d 601; *State v. Hawk, supra.*

We find that, based upon the foregoing, appellant's plea was not made knowingly, intelligently, and voluntarily; therefore, the first assignment of error is with merit.

In the second assignment of error, appellant argues that his trial counsel was ineffective, since he failed to inform appellant prior to his plea that the felonious assault charge was a nonprobationable offense.

Based upon our disposition of the first assignment of error, the second assignment of error is moot.

The judgment of the trial court is hereby reversed, and this case is remanded for further proceedings according to law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOSEPH E. O'NEILL, P.J., and COX, J., concur.